968 A.2d 1253

Clifford L. STEINER and Bonnie J. Steiner, Appellees

v.

John F. MARKEL, Esquire and Nikolaus
& Hohenadel, LLP, Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 2, 2008.

Decided April 29, 2009.

516

Thomas A. French, Cory Allen Iannacone, Rhoads & Sinon, L.L.P., Harrisburg, for John F. Markel, Esquire and Nikolaus & Hohenadel, LLP, appellants.

Guy Paul Beneventano, Nauman, Smith, Shissler & Hall, L.L.P., Harrisburg, for Clifford L. and Bonnie J. Steiner, appellees.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

We consider whether the Superior Court may declare, *sua sponte*, that a cause of action described in a complaint as a claim for "professional malpractice" is actually a claim for breach of contract for purposes of determining which statute of limitation applies. Appellants, John F. Markel, Esquire, and Nikolaus & Hohenadel, LLP (collectively referred to as the "Attorneys"), appeal from the Superior Court's order reversing the trial court's decision in the Attorneys' favor of a motion for judgment on the pleadings. We reverse the Superior Court and reinstate the trial court's order. We hold that Appellees, Clifford L. Steiner and Bonnie J. Steiner (collectively referred to as the "Clients") waived their right to argue that their professional malpractice claim should be construed as a contract claim. The Superior Court should not have addressed this issue *sua sponte*.

In January 2002 the Clients negotiated a purchase of certain real property in Lancaster County. The Clients contracted with Mr. Markel, a partner at Nikolaus & Hohenadel, LLP, to act as the attorney at the February 8, 2002 closing. Mr. Markel erroneously described the property in the deed he

prepared and the error was not discovered until after the closing occurred. Although Mr. Markel attempted to correct his error through negotiation with the sellers, he was unsuccessful. As a result of the error, the Clients were sued by the sellers of the property.

Initially, the Clients attempted to join the Attorneys, *via* a joinder complaint, in the action commenced by the sellers. The joinder complaint did not contain a claim described as a breach of contract claim. Instead, the joinder complaint contained a claim for professional malpractice. The joinder complaint was dismissed because the Clients failed to file a certificate of merit.[1]

On October 19, 2004, the Clients initiated the foregoing action by filing a writ of summons against the Attorneys in the Court of Common Pleas of Lancaster County. On December 7, 2004, the Clients filed their complaint, which contained three counts: Count I—Professional Malpractice; Count II—Third Party Beneficiary; and Count III—Breach of Good Faith and Fair Dealing (the "Complaint").[2] The Complaint did not contain a claim described as a breach of contract claim. The language of Count I of the Complaint tracks the requirements for a tort legal malpractice claim under Pennsylvania law.[3] *See Kituskie v. Corbman*, 552 Pa. 275, 714 A.2d 1027,

1. In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the plaintiff must file a certificate of merit either with the complaint or within sixty days after the filing of the complaint. Pa. R.C.P. No. 1042.3.

2. In this action, the Clients filed certificates of merit to support their Complaint.

3. In relevant part, Count I of the Complaint states as follows:

    90. As a result of and in reliance upon Attorney Markel's aforesaid representations, advice, and counsel, the Steiners closed on the purchase of the property.

    . . .

    92. Attorney Markel owed a duty to the Steiners to properly and correctly prepare a deed and conduct closing.

    93. Attorney Markel, in violation of his duty to the Steiners, did not properly and correctly prepare a deed and conduct closing, but rather did so negligently, carelessly and unskillfully . . .

1029 (1998) (noting that a claim of legal malpractice requires that the plaintiff plead the following three elements: employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff).

Initially, the Attorneys filed preliminary objections to the Complaint. The Clients then filed a petition to amend the Complaint. In the petition to amend, the Clients did not argue that Count I was based in contract, nor did the Clients seek leave to add a breach of contract claim to the Complaint.

After the Clients agreed to strike Count III of the Complaint, the Attorneys filed an answer and new matter to the Complaint. In the new matter, the Attorneys stated that the Clients' professional malpractice claim was barred by the two-year statute of limitations applicable to tort claims. 42 Pa. C.S. § 5524.

The Attorneys then filed a motion for judgment on the pleadings, arguing, *inter alia,* that the professional malpractice claim in the Complaint was untimely because the claim was a tort claim and the Complaint was filed after the two-year statute of limitations for tort claims had run. On October 23, 2006, the trial court dismissed Count I of the Complaint on the basis that the Clients' professional malpractice claim was barred by the statute of limitations.[4]

The Clients filed a motion for reconsideration. In the motion for reconsideration, the Clients argued that the two-year statute of limitations on their professional malpractice

94. By his aforesaid conduct, Attorney Markel failed to exercise ordinary skill and knowledge possessed by attorneys in the community.

95. By reason of the foregoing negligence of Attorney Markel, the Steiners have been injured ...

96. Nikolaus & Hohenadel is liable for the professional malpractice of Attorney Markel ...

4. The trial court also dismissed Count II of the Complaint on the basis that the Clients failed to state a claim on a theory of "third party beneficiary." It appears that the Clients thereafter abandoned any claim based upon a theory of third party beneficiary.

claim had been tolled by the Attorneys' concealment of their wrongdoing, which delayed the Clients' discovery of their injury. In the motion for reconsideration, the Clients did not argue that their Complaint contained a claim for breach of contract.[5] The trial court denied the Clients' motion for reconsideration.[6]

The Clients then appealed the trial court's dismissal of the Complaint to the Superior Court. In their Rule 1925(b) statement of matters complained of on appeal (the "Concise Statement"), the Clients did not assert that their professional malpractice claim was or involved a breach of contract claim.[7] Rather, the Clients again raised the issue that the two-year statute of limitations on their professional malpractice claim should have been tolled as a result of the Attorneys' actions.

The Superior Court reversed the trial court and remanded the case, holding, *sua sponte*, that the Complaint stated a timely claim for breach of contract despite the fact that the Clients did not advance that argument in their appeal. In holding that the Complaint contained a breach of contract claim, the Superior Court relied upon the following statement: "At closing, the Steiners also paid a fee to Nikolaus & Hohenadel for 'services' allegedly rendered by attorney Markel." Superior Court Memorandum at 14. The Superior Court also considered whether the statute of limitations on the Clients' professional malpractice claim was tolled by the Attorneys' conduct, and the Superior Court affirmed the trial court's finding that the two year statute of limitations for tort actions had not been tolled. The Attorneys filed a petition for allowance of appeal, which this Court granted to address

5. The statute of limitations for a breach of contract claim is four years. 42 Pa.C.S. § 5525. Under this statute, the Clients' claim would be timely if it was a breach of contract claim, rather than a tort claim.

6. This Court's grant of allocatur was limited and did not include the issue of whether the statute of limitations for tort actions was tolled.

7. Rule 1925 was amended effective July, 2007. The Clients filed their Concise Statement on February 9, 2007 under the older version of Rule 1925. The changes are of no moment here.

whether the Superior Court's *sua sponte* action constituted reversible legal error.[8]

The Attorneys argue that the Superior Court should not have decided that the allegations of the professional malpractice claim in the Complaint made out a breach of contract claim because the Clients never raised this argument, despite repeated opportunities to do so. According to the Attorneys, in the petition to amend, the motion for reconsideration, and prior pleadings, the Clients pursed their professional malpractice claim only as a tort claim. The Attorneys note that they therefore never had an opportunity to rebut the recasting of the malpractice claim as a breach of contract claim. The Attorneys also argue that the Complaint does not contain sufficient facts to support a claim for breach of contract. The Attorneys urge this Court to reverse the Superior Court and reinstate the trial court's order granting judgment on the pleadings in favor of the Attorneys.

The Clients argue that, pursuant to the Pennsylvania Rules of Civil Procedure (the "Rules"), a plaintiff does not have a duty to plead a specific legal theory in a complaint. The Clients argue that, under the Rules, the trial court is obligated to determine whether a complaint states a claim under any theory. The Clients argue that the Complaint states a claim for breach of contract and that the Clients preserved this issue for appellate review by including in the Concise Statement, as one basis for appeal, an allegation that the trial court erred because it failed to determine whether the Complaint stated a cause of action "under any theory."

This appeal raises the issue of whether an appellate court may, *sua sponte,* search within a complaint to find a cause of action that the plaintiffs never argued was present in the complaint. This Court has consistently held that an appellate court cannot reverse a trial court judgment on a

8. This Court granted appeal to address the following issue: "Was it reversible legal error for the Superior Court to *sua sponte* raise the issue of whether a Complaint contained a particular cause of action when that cause of action was never previously asserted before the trial court or on appeal?"

basis that was not properly raised and preserved by the parties. *Danville Area Sch. Dist. v. Danville Area Educ. Ass'n,* 562 Pa. 238, 754 A.2d 1255, 1259 (2000); *Commonwealth v. Boros,* 533 Pa. 214, 620 A.2d 1139, 1140 (1993); *Fisher v. Brick,* 358 Pa. 260, 56 A.2d 213, 215 (1948). Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte. Knarr v. Erie Ins. Exch.,* 555 Pa. 211, 723 A.2d 664, 666 (1999) (holding that the trial court exceeded its proper scope of review by raising an issue that was not preserved by appellate review); *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256, 257–58 (1975) (holding that an appellate court may not litigate for the parties).

At the outset, we note that the Superior Court acknowledged that the Clients never argued that their Complaint contained a claim for breach of contract. In its memorandum, the Superior Court majority stated: "Appellants do not expressly argue on appeal that breach of a contract is among the causes of action that the lower court had a duty to discern and consider." Superior Court Memorandum at 17 n. 7.

The Superior Court therefore properly evaluated the breach of contract issue only if the following is true: the broad language in the Client's Concise Statement was sufficient to preserve this issue for appeal; and the trial court had the duty to discern this claim in the Complaint. In this case, neither proposition is true. The issue of whether the Complaint contains a claim for breach of contract was waived and therefore should not have been raised *sua sponte* by the Superior Court.[9] Moreover, the trial court did not have a duty to scour the Complaint to find a breach of contract claim therein.

9. The dissent does not dispute our conclusion that the language in the Concise Statement was too vague to preserve for appeal the issue of whether the Complaint contained a claim for breach of contract. Therefore, although the dissent departs from our reasoning regarding the extent to which a trial court has a duty to discern a cause of action in a complaint, the departure is irrelevant here because the Superior Court was restrained from deciding an issue that the Clients failed to preserve. The dissent also suggests that this Court should issue a supplemental order to clearly define the different elements of a contract and tort claim for legal malpractice. In so doing, we would be issuing

First, the Clients did not preserve for appeal the issue of whether their Complaint contained a claim for breach of contract. The Clients' argument that they preserved the issue by claiming in their Concise Statement that the trial court had a duty to review the Complaint for "any theory" is wholly without merit. Moreover, in general, a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection. *See Commonwealth v. DeLoach*, 714 A.2d 483, 486 n. 8 (Pa.Commw.1998) (holding that issues not raised at trial cannot be raised in a 1925(b) statement); *Rutledge v. Depart. of Trans.*, 97 Pa.Cmwlth. 98, 508 A.2d 1306, 1306–07 (1986) (same). Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance. Pa. R.A.P. 302.[10] Pennsylvania law is clear that claims and objections that are not timely made are waived. *See Takes v. Metropolitan Edison Co.*, 548 Pa. 92, 695 A.2d 397, 401 (1997) (applying the rule of waiver in the context of trial objections).

Nowhere prior to their Concise Statement, where the Clients argued that the trial court had a duty to review the Complaint "under any theory," did the Clients even vaguely refer to a breach of contract claim. The Complaint contained three specific counts: Count I—Professional Malpractice; Count II—Third Party Beneficiary; and Count III—Breach of Good Faith and Fair Dealing. The Clients had ample opportunity to raise their breach of contract theory in an amended complaint, in their response to the Attorneys' motion for judgment on the pleadings, and even perhaps in the motion for

an improper advisory opinion because, as argued at length herein, the Clients did not preserve for appeal the issue of whether their claim for legal malpractice should be recast.

10. Judge Tamilia succinctly summarized the fact that the trial court does not have a duty to save a plaintiff's claim by advancing arguments on the plaintiff's behalf in its Rule 1925(a) opinion. *See State Farm Mut. Auto. Ins. Co. v. Ware's Van Storage*, 953 A.2d 568, 577 (Pa.Super.2008) (Tamilia J., dissenting) (noting that where plaintiff State Farm raised the issue of consolidation for the first time in its Rule 1925(b) statement, it was error for the appellate court to consider consolidation because it "was not the trial court's duty to find ways to save State Farm's complaint from dismissal, it was State Farm's duty").

reconsideration. To the contrary, the arguments advanced by the Clients regarding tolling demonstrate that the Clients viewed Count I to state a tort claim. The Clients' failure to ever alleged that Count I was based in contract waived their right to do so on appeal. Indeed, by raising this argument *sua sponte*, the Superior Court deprived the Attorneys' of an opportunity to respond thereto.

Second, contrary to the Clients' argument, the trial court did not have a duty to scour the Complaint and uncover all potential claims therein. As the basis for their argument, the Clients rely upon a line of Superior Court cases, most recently *Cardenas v. Schober*, 783 A.2d 317 (Pa.Super.2001). According to the Clients, *Cardenas* stands for the proposition that a trial court must "discover" causes of action within a complaint.

██ We disagree with this interpretation of the *Cardenas* decision, and moreover state that, under the facts of the instant case, the trial court did not have a duty to find a breach of contract claim within the Complaint.[11] In *Cardenas*,

11. The dissent, relying primarily on *Cardenas* and *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), argues that Pennsylvania's fact pleading requirements obligate a court to search within a complaint to divine any possible claims stated therein. Not only is *Cardenas* not binding on this Court, but the language in both *Cardenas* and *Kuisis* is more limited than the dissent concludes. In *Cardenas*, the Superior Court held that "it is not necessary that the plaintiff identify the specific *legal theory* underlying the complaint." 783 A.2d at 325 (emphasis added). In *Kuisis*, this Court opined as follows:

> The notion that a complaint weds a plaintiff to a particular *theory of liability* is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not "theory" pleading; a *plaintiff is free to proceed on any theory of liability* which the facts alleged in his complaint will support.

319 A.2d at 918 (emphasis added). Pursuant to the holdings in *Cardenas* and *Kuisis*, a plaintiff need not plead a specific theory of liability in a complaint.

The holdings in *Cardenas* and *Kuisis* do not, however, excuse a plaintiff from pleading a cognizable *claim* in the complaint because a "legal theory" and a "claim" are two different concepts. Black's Law Dictionary defines a "legal theory" as "the principle under which a litigant proceeds, or on which a litigant bases its claims or defenses in a case." BLACK'S LAW DICTIONARY 907 (7th ed. 1999). A "claim" is defined as "the aggregate of operative facts giving rise to a right enforceable by a court." BLACK'S LAW DICTIONARY 240 (7th ed.

the plaintiffs pleaded various claims relating to an inheritance, including breach of contract, fraud, misrepresentation, promissory estoppel, conversion and undue influence. *Id.* at 320. The trial court dismissed the complaint on preliminary objections, holding that the Complaint did not contain facts sufficient to support a cause of action arising from intentional interference with an inheritance. *Id.* The plaintiffs asked the Superior Court to determine "[w]hether the Plaintiffs pleaded sufficient material facts in the Amended Complaint to support a claim that they were entitled to damages for the Defendant's intentional or, in the alternative, negligent interference with an inheritance." *Id.* at 321. The Superior Court held that

1999). Pennsylvania courts have recognized this distinction, holding that:

> The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the causes of action from a pleading of facts which obscurely support the claim. *While it is not necessary that the complaint identify the specific legal theory of the underlying claim, it must apprise the defendant of the claim being asserted and summarize the essential facts to support that claim.* If a plaintiff fails to properly plead a separate cause of action, the cause he did not plead is waived.

*Grossman v. Barke,* 868 A.2d 561, 568 (Pa.Super.2005) (emphasis added); *see also Estate of Swift by Swift v. Northeastern Hosp.,* 456 Pa.Super. 330, 690 A.2d 719, 723 (1997). A plaintiff need not disclose a particular theory in the complaint, but the plaintiff must clearly plead a claim which can then be pursued under whatever theory the plaintiff determines is prudent.

The dissent also references this Court's decision in *Lobolito, Inc. v. N. Pocono Sch. Dist.,* 562 Pa. 380, 755 A.2d 1287 (2000). In *Lobolito,* this Court reversed in part the holding of the trial court which granted preliminary objections on both contractual and equitable claims based upon the fact that a school board was entitled to disavow contracts executed by its successor. *Id.* at 1292. The published opinion in *Lobolito* does not explicitly state whether the plaintiff asserted separate breach of contract and equitable claims in its complaint, nor whether the plaintiff squarely addressed this issue in its Rule 1925(b) statement. The language of this Court's decision references a reversal of only some dismissed counts, which implies that the plaintiff did indeed plead separate counts for breach of contract and equitable claims. *Id.* at 1292 ("we affirm the granting of the preliminary objections *with regard to those counts* in which Lobolito avers breach of contract and seeks lost profits. Such a finding, however, does not preclude Lobolito from recovering its out-of-pocket costs under an equitable theory of relief.") (emphasis added). The facts of *Lobolito,* therefore, are distinguishable.

Pennsylvania law supported a claim for intentional interference with an inheritance, and that the plaintiffs had pleaded sufficient facts to support such a claim. *Id.* at 325–327. Therefore, the Superior Court in *Cardenas* did not "discover" a new theory in a complaint. Rather, on appeal, in accordance with the appellant's claim on appeal and not merely *sua sponte,* the Superior Court held that the plaintiffs stated facts sufficient to support a claim that they *had identified* as being the basis of their complaint. The *Cardenas* case involved a determination of whether a claim was supported under Pennsylvania law, and whether the plaintiff's complaint contained the necessary facts to support that claim. The *Cardenas* case did not involve the Superior Court's discovery of a previously unidentified claim within a complaint.

Here, the facts are sharply different from *Cardenas.* Unlike the plaintiffs in *Cardenas,* who argued through all stages of the litigation that their complaint contained a claim for intentional interference with an inheritance, the Clients here never argued that the Complaint contained a claim for breach of contract. Moreover, in the instant matter, the Superior Court did not evaluate whether the trial court properly interpreted the facts pleaded in support of the Clients' claim for professional malpractice. To the contrary, the Superior Court in this case evaluated whether the Complaint contained an entirely different, previously unstated, theory of recovery. The Superior Court in *Cardenas* simply ruled that the appellants' complaint contained a claim for intentional interference with an inheritance. Here, even the Clients' Concise Statement never mentioned a breach of contract claim, thus requiring the Superior Court to divine this claim for itself.

As justification for searching the Complaint to find a viable cause of action, the Superior Court relied upon Rules of Civil Procedure 1019 and 126. Rule 1019(a) provides that "the material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a). We have construed this rule to mean that the complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts

to support the claim. *See Landau v. Western Pa. Nat'l Bank,* 445 Pa. 217, 282 A.2d 335, 341 (1971) (noting that the purpose of Rule 1019(a) is to require the plaintiff to disclose sufficient facts to enable the adverse party to prepare his case). Pursuant to Rule 126, the Rules are to be liberally interpreted. Pa.R.C.P. 126.

Rules 1019(a) and 126 do not support the Superior Court's action. The Clients here simply did not plead facts sufficient to apprise the Attorneys that the Clients intended to allege a cause of action grounded in contract. Although the Clients generally argued that the Complaint was valid and contained a timely claim, the Clients never said, argued or wrote that their Complaint contained a breach of contract claim. Instead, the Clients asked the appellate courts to scour the Complaint for any and all causes of action. Pennsylvania law does not support such an obligation, which would create a moving target for the courts and litigants. If the Clients themselves do not know what their cause of action is, the Attorneys cannot reasonably respond to it.

The courts should not recast a pleading in a way not intended by the parties. In *Wiegand,* this Court noted that when a court decides issues *sua sponte,* it exceeds its proper appellate function and unnecessarily disturbs the processes of orderly judicial decisionmaking. 337 A.2d at 257.

Accordingly, we hold that the Clients did not preserve for appeal the issue of whether their professional malpractice claim was a claim for breach of contract. We therefore reverse the Superior Court and reinstate the order of the Court of Common Pleas of Lancaster County that entered a motion for judgment on the pleadings in favor of the Attorneys.

Chief Justice CASTILLE and Justices EAKIN, BAER and McCAFFERY join the opinion.

Justice TODD files a concurring opinion.

Justice SAYLOR files a dissenting opinion.

Justice TODD, concurring.

I agree with the conclusion expressed in the Majority Opinion that Appellees waived their argument with respect to trial court error in not construing their professional malpractice claim as a claim for breach of contract. Because Appellees failed to raise this argument in response to Appellants' motion for judgment on the pleadings, or in Appellees' concise statement pursuant to Pa.R.A.P. 1925(b), it is, in my view, clearly waived. Accordingly, I would not reach the underlying question of whether a trial court indeed has a duty to discern a cause of action from the facts stated in a complaint. I, therefore, join the Majority Opinion's analysis and conclusion only with regard to waiver.

Justice SAYLOR, dissenting.

I respectfully differ with the majority's reasoning in several material respects, and I favor a supplemental allowance of appeal to address what I believe is a significant subsidiary question.

In terms of the majority's approach, first, its opinion rejects an interpretation of *Cardenas v. Schober,* 783 A.2d 317 (Pa.Super.2001), that would recognize a duty with the trial courts to discover a cause of action from the facts stated in a complaint. *See* Majority Opinion, at 1258. Nevertheless, the majority does not reconcile its position with the following passage from the *Cardenas* decision: "[I]t is the duty of the court to discover from the facts alleged in a complaint the cause of action, if any, stated therein." *Cardenas,* 783 A.2d at 325; *see also id.* ("[I]t is not necessary that the plaintiff identify the specific legal theory underlying the complaint."); *DelConte v. Stefonick,* 268 Pa.Super. 572, 577, 408 A.2d 1151, 1153 (1979) (same).

The majority proceeds to distinguish *Cardenas* factually, establishing that the intermediate appellate court in that case did not *sua sponte* discover a cause of action from the facts stated in a complaint. *See* Majority Opinion at 1259. However, its opinion does not acknowledge that this Court appears to

have done so in a decision referenced by Appellees in their brief and emphasized at oral argument. *See Lobolito, Inc. v. North Pocono Sch. Dist.*, 562 Pa. 380, 389–91, 755 A.2d 1287, 1292–93 (2000) (discerning the possible application of a promissory estoppel theory from the facts alleged in a complaint, although such theory was not raised in the appellate briefing). More generally, the majority opinion seems disharmonious with the general conception of fact pleading relied upon by Appellees, although the majority does not appear to confront this longstanding principle directly.[1]

To the degree Pennsylvania is to remain a fact-pleading jurisdiction, I have no objection to continuing the practice of courts reviewing the allegations of a complaint to determine whether the facts state a cause of action on any theory. *See, e.g., Cardenas*, 783 A.2d at 325.[2] Plaintiffs must bear in mind, however, both the prohibition against splitting of causes of action, *see* Pa.R.C.P. No. 1020(d), and the specific obligation to state each cause of action in a separate count where the intent is to pursue multiple causes of action, *see* Pa.R.C.P. No.

1. In *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), this Court described the fact pleading approach as follows:

   > The notion that a complaint weds a plaintiff to a particular theory of liability is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not 'theory' pleading; a plaintiff is free to proceed on any theory of liability which the facts alleged in his complaint will support.

   *Id.* at 326 n. 8, 319 A.2d at 918 n. 8. I recognize that this perspective is in tension with other authority referenced by the majority and with our Rule of Civil Procedure 1020, where multiple causes of action are pursued in a complaint (as discussed below). In such circumstances, it would be best to provide clarification by recognizing the conflicts and either reconciling them or directly disapproving one line or the other of irreconcilable decisions where appropriate.

2. There are reasonable arguments to be made, however, that, given the complexity of modern litigation and experience with strategic behavior in pleading, we should move to a system where parties are expressly and consistently required to identify both the material facts and any or all pertinent causes of action. While I believe there are advantages to such a scheme, my position is that any changes should be made on a prospective basis, via rulemaking; upon the advice of the Civil Procedural Rules Committee; and after full opportunity for comment by the public and the bar.

530

1020(a).[3] Amendments to correct pleading defects (such as a failure to identify multiple causes of action) are to be liberally allowed in the interests of justice. *See* Pa.R.C.P. No. 126. Where, however, the amendment pertains to the addition of a cause, timing is a relevant issue (since, as in the present case, statutes of limitations may come into play). *See Ash v. Continental Ins. Co.*, 593 Pa. 523, 525, 932 A.2d 877, 879 (2007) (explaining that "an amendment introducing a new cause of action will not be permitted after the statute of limitations has expired"). These factors seem to me to erect substantial impediments to Appellees' arguments, particularly since Appellees pursued multiple causes of action in their complaint.

As (or perhaps more) important, a substantial, underlying, conceptual problem in this case is that this Court has not detailed the elements of a contract-based cause of action for legal malpractice in a fashion which would meaningfully distinguish them from those necessary to support a tort-based cause. Indeed, the discussion of a contract-based cause in *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993), suggests the elements of tort- and contract-based causes of action in this setting overlap substantially, if not completely. *See id.* at 251–52, 621 A.2d at 115.[4] *See generally* 3 WEST'S PA. PRAC., TORTS: LAW AND ADVOCACY § 6:29 (2008) (suggesting that, if *Bailey* is adhered to on its terms, "any distinction between contract and tort claims is practically meaningless" and plaintiffs, by mere "skillful pleading" may avail themselves of the longer limitations period). A counter-position has developed in the federal courts, which have effectively predicted this Court would require averment of a breach of some particular provision of the agreement of representation, or a failure to follow specific client instructions, to support a contract-based claim. *See, e.g., Stacey v. City of Hermitage*, 2008 WL 941642, *4 (W.D.Pa. Apr. 7, 2008); *see also Edwards v. Thorpe*, 876

3. In essence, the rules already require more than mere fact pleading in cases where the plaintiff seeks to pursue more than one cause of action.

4. *Bailey* also suggests that the contractual duties owed by an attorney to his client (i.e., the basis for a contract cause of action) overlap with the duties owed to clients by the profession at large (or the basis for a tort cause of action). *See id.*

F.Supp. 693, 694 (E.D.Pa.1995). In light of such enhanced requirement for contract-based pleading, these courts have admonished, "a plaintiff may not repackage a negligence-based malpractice claim under an assumpsit theory to avoid the statute of limitations." *Stacey*, 2008 WL 941642, at *5.

In my view, the preferable approach to clarifying this disordered area of the law would be to delineate the elements of a contract cause of action for legal malpractice, compare them to those pertaining to a tort cause, and isolate any distinguishing factors. In this effort, the federal courts' approach should be considered. The difficulty is that, although Appellants sought to raise this matter in their petition for allowance of appeal,[5] this Court issued a limited grant order omitting the question. Since, upon further study, I believe we should have included the issue in our grant order, I would now remedy this via a supplemental order with leave to submit additional briefing.

In response to my position, the majority suggests that I have confused the concepts of "claims" and "legal theories," *see* Majority Opinion at 524–26 n. 11, 968 A.2d at 1258–59 n. 11; misconstrued the *Lobolito* decision, *see id.*; and proposed the issuance of an improper advisory opinion, *see id.* at 522–23 n. 9, 968 A.2d at 1257 n. 9.

I have difficulty answering the first of these points, because the majority does not indicate what passage of my opinion it is challenging. For my part, I do not see where I have used the terms "legal theories" or "claims" inappropriately. As to *Lobolito*, the majority's inference that the plaintiff in that case had pursued equitable theories in its complaint, *see* Majority Opinion at 524–26 n. 11, 968 A.2d at 1258–59 n. 11, is certainly inconsistent with at least one court's summary of the case. *See Lobolito, Inc. v. North Pocono Sch. Dist.*, 722 A.2d 249,

---

**5.** Appellants framed the issue as follows:

Did the Superior Court err in holding that Count I of the Plaintiff's Complaint entitled "Professional Malpractice" actually set forth a cause of action for breach of contract where no reasonable reading of the Complaint would lead to this conclusion because it failed to set forth the required allegation of a specific contractual provision breached by the attorney or a specific instruction from the client which the attorney failed to follow.

251 (Pa.Cmwlth.1998) (explaining that the plaintiff "filed an action ... alleging a breach of contract and seeking consequential damages"). Moreover, as a matter of record, the *Lobolito* appellant simply did not preserve any issues related to equitable claims before this Court. *See* Brief for Appellant at *5, *Lobolito v. North Pocono Sch. Dist.,* No. 193 MAP 1999, 1999 WL 33657584 (Pa. Sept. 15, 1999) (setting forth the statement of the questions involved, confined to matters of contract). *See generally* Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Thus, it seems clear that the matter of other theories of relief was no more or no less waived in *Lobolito* than it is in this case, and that this Court's examination of the complaint in *Lobolito* for equitable theories was, in fact, undertaken *sua sponte.*

Finally, according to the majority, it is inappropriate for either the parties or me to address the matter of the sufficiency of the underlying complaint to state a contract cause of action, because that issue is waived. *See* Majority Opinion at 522–23 n. 9, 968 A.2d at 1257 n. 9. However, despite its assertion of waiver challenging any discussion by others, the majority itself decides this issue. *See* Majority Opinion at 527, 968 A.2d at 1260 (applying Rules of Civil Procedure 1019 and 126, and concluding "[t]he Clients here simply did not plead facts sufficient to apprise the Attorneys that the Clients intended to allege a cause of action grounded in contract."). Even aside from the implications of *Lobolito,* if the Court itself is going to address a legal issue, the parties and responding Justices should be free to do so as well. In other words, either this is a pure Rule 1925 waiver case, and the majority should confine itself to this rule's application, or the proceedings should be open for all participants to address substantive questions which are also being decided by the Court.