J-S12003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANTANDER BANK, N.A., F/K/A SOVEREIGN BANK, N.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EXPRESS SIGN OUTLET INC AND LINDA DEPAOLO | : | No. 2912 EDA 2019 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered August 23, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180801526

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 12, 2020**

Express Sign Outlet Inc. ("Express") and Linda Depaolo, collectively ("Appellants"), appeal from the order entered August 23, 2019, granting Appellee, Santander Bank's, N.A., F/K/A Sovereign Bank, N.A. ("Bank"), motion to enforce settlement.  We affirm.

The trial court summarized the procedural history of this case as follows:

On August 17, 2018, a Confession of Judgment was docketed that noted that the collective sum pursuant to an agreement was owed [to Bank] in the amount of $13,750.77.  On September 6, 2018, Appellant[s'] attorney submitted Appellant[s'] offer to settle.  *See* Email from Robert Rust dated September 6, 2018, attached as Exhibit 1.  On January 3, 2019, a Settlement Agreement ("the Agreement") was sent to Appellant[s'] attorney for review and execution.  *See* Email from Robert Saldutti dated January 3, 2019, attached as Exhibit 2.  On

_____

[*] Retired Senior Judge assigned to the Superior Court.

the instant date, Appellant[s'] attorney confirmed receipt of the Agreement. *See* Email from Robert Rust dated January 3, 2019, attached as Exhibit 3. On January 15, 2019, the first payment was made for $5,000 pursuant to the Agreement. On May 22, 2019, Appellant[s'] attorney sent an email stating that "the second and final payment is not due until April 21, 2109." *See* Email from Robert Rust dated May 22, 2019, attached as Exhibit 4. Appellee alleges that despite the typographical error, Appellant knew that the second payment was due and owing in the same year as the first payment.

On June 19, 2019, Appellee filed a Motion to Enforce Settlement. On July 8, 2019, Appellants filed a Motion to Extend Time to Respond. On August 2, 2019, Appellant filed an Answer to the Motion to Enforce Settlement. On August 23, 2019, an Order was docketed granting Appellee's Motion to Enforce Settlement.

On September 17, 2019, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania ("Superior Court"), which appeal the Superior Court docketed at 2912 EDA 2019. On September 18, 2019, this [c]ourt docketed an Order directing Appellant to provide a Statement of Errors pursuant to Pa. R.A.P. 1925(b). On October 8, 2019, Appellant timely filed a Statement of Errors.

Trial Court Opinion, 10/23/19, at 1-2.

On appeal, Appellant presents the following issue for our review: "Whether the lower court properly applied the factors in analyzing the best interests for the Appellant, Express Sign Outlet?" Appellant's Brief at 6 (full capitalization omitted). Specifically, Appellant argues: "The Appellant, De[p]aolo even though no longer has an interest in the company, Appellant Express is presuming the alternative standard of PA ST 15 Pa.C.S.A. § 1716(b) in 'considering the best interests of the corporation' as the debt is with

Appellant De[p]aolo. Cuker v. Mikalauskas, 547 Pa. 600, 692 A.2d 1042 (1997)." *Id.* at 10.

For context purposes, Appellants assert in the "statement of the case" of their appellate brief that "it was brought to the attention of Appellee's counsel by an email from Appellant[s'] attorney on September 14, 2018 that Appellant Express was sold, and Appellant Depaolo is no longer the owner, as of May 2017." Appellants' Brief at 7. Moreover, in Appellants' Pa.R.A.P. 1925(b) statement, Appellants present the following issue:

> The Honorable Trial Court was not advised by [Bank] that [Appellant Express Sign Outlet] should be excluded from the Court's judgment. The proper and only [Appellant], Linda De[p]aolo ("De[p]aolo"), does not own or have any connection with Express, as De[p]aolo sold her interest in Express well before [Bank] sought repayment of the Notice owed to it by De[p]aolo. Moreover, from the outset of its lawsuit, [Bank] was given formal written notice that Express was not a party to the referenced Note. [Bank] chose to ignore this Note and in so doing is intentionally harming the business reputation and credit rating of Express. Express seeks redress to this wrong by securing this Honorable Court's removal of Express' name from the Court's judgment. If this Honorable Court does remove Express from the Court's judgment, Express is content to consider the matter resolved in lieu of it taking legal action against [Bank] for its blatant refusal to act on the timely notice and demand to remove Express from its complaint.

Pa.R.A.P. 1925(b) statement, 10/8/19, at 2-3.

We first note that the issue Appellants raised on appeal is vague and not entirely consistent with the issue raised in the Pa.R.A.P. 1925(b) statement. To the extent that Appellants are arguing that Express is not a proper party to this action and that it should be removed from the court's judgment, as

asserted in their Pa.R.A.P. 1925(b) statement, we conclude that this issue is waived.

Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Hence, only claims properly presented in the lower court are preserved for appeal." **Coulter v. Ramsden**, 94 A.3d 1080, 1089 (Pa. Super. 2014).

> [I]n general, a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection. Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance. Pa. R.A.P. 302. Pennsylvania law is clear that claims and objections that are not timely made are waived.

**Steiner v. Markel**, 968 A.2d 1253, 1257 (Pa. 2009).

In the case herein, Appellants at no time prior to filing their Pa.R.A.P. 1925(b) statement asserted that Express was not a proper party to the action. In fact, the complaint for confession of judgment was filed on August 17, 2018. According to Appellants, Appellant Depaolo had sold Express in May of 2017. Appellants, however, did not raise this issue in response to the filing of the complaint for confession of judgment. In fact, there is no indication in the record that at any time in the underlying proceedings did Appellants assert that Express was not a proper party to the proceeding. Furthermore, as will be discussed in greater detail below, when the parties entered into the Settlement Agreement based on Appellants' offer, the Agreement included

both Appellants. Stipulation of Settlement, 1/11/19, at 1-3. Thus, to the extent that Appellants on appeal attempt to argue that Express is not a proper party to this action and should be removed from the judgment imposed, that claim is waived.

To the extent that Appellants argue that the trial court improperly applied "the factors in analyzing the best interests for the Appellant, Express Sign Outlet," Appellant's Brief at 6, we also find this claim to lack merit. We note that the appealed order granted Appellee's motion to enforce the Settlement Agreement. Notice of Appeal, 9/17/19, at 1. As such, Appellants' identification of a "best interests of the corporation" standard as set forth in 15 Pa.C.S. § 1716(b),[1] Appellant's Brief at 10, is improper.

_____

[1] The statutory provision at 15 Pa.C.S. § 1716 provides, as follows:

### § 1716. Alternative standard

**(a) General rule.--**In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors of a business corporation may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of section 1712 (relating to standard of care and justifiable reliance).

**(b) Presumption.--**Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director shall be presumed to be in the best interests of the corporation.

Contrary to Appellants' assertion, the proper standard of review of a motion for enforcement of a settlement agreement is set forth as follows:

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 408 (Pa. Super. 2010).

We have further explained: Pennsylvania law states that once formed, a settlement will not be set aside except upon "a clear showing of fraud, duress, or mutual mistake." *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa. Super. 2004). "Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement...." *Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority*, 916 A.2d 1183, 1189 (Pa. Super. 2007). The court might consider extrinsic or parol evidence to determine the parties' intent only where the language of the agreement is ambiguous. *Step Plan Services, Inc.*, 12 A.3d at 409-410.

> A mutual mistake occurs when the written instrument fails to properly set forth the true agreement among the parties. Further, the language of the instrument should be interpreted in the light

---

**(c) Cross reference.--**See section 1711 (relating to alternative provisions).

of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

***Daddona v. Thorpe***, 749 A.2d 475, 487 (Pa. Super. 2000) (citations and quotation marks omitted) (emphasis added).

We have further stated:

> We most commonly have allowed reformation of mistaken contract provisions in cases of "scriveners' errors," where the parties' writing mistakenly failed to record their agreed-upon intentions. ***See Daddona v. Thorpe***, 749 A.2d 475, 487 (Pa. Super. [2000]) ("[a] mutual mistake occurs when the written instrument fails to ... set forth the 'true' agreement among the parties"), *appeal denied*, 563 Pa. 702, 761 A.2d 550 (2000); ***see also Bollinger v. Central Pa. Quarry Stripping & Constr. Co.***, 425 Pa. 430, 229 A.2d 741, 742 (1967); ***Bugen v. New York Life Ins. Co.***, 408 Pa. 472, 184 A.2d 499, 500 (1962). In such situations, the court may reform the contract document so that its language conforms to what the parties intended. ***Bollinger***, 229 A.2d at 742.

***Murray v. Willstown Township***, 169 A.3d 84, 91 (Pa. Super. 2017).

In the case *sub judice*, the subject Settlement Agreement provides as follows:

<u>STIPULATION OF SETTLEMENT</u>

The within matter having been amicably settled between the parties and Defendant[s], it is hereby stipulated and agreed that the same should be marked "SETTLED" with the Court subject to the terms and conditions annexed hereto.

TERMS OF SETTLEMENT

1. Defendants, Express Sign Outlet, Inc. and Linda Depaolo, (hereinafter the "Defendants") acknowledge[] and admit[] there is due and owing from [them] to Plaintiff, Santander Bank, N.A., f/k/a Sovereign Bank, N.A., (hereinafter the "Plaintiff") $13,750.77, for the claims set forth in Plaintiff's Complaint

inclusive of attorney fees, court costs and collection costs (hereinafter, the "Claim Amount").

2.    In settlement of this legal action, Defendants shall pay Plaintiff $13,750.77 (the "Settlement Amount").

3.    The Settlement Amount shall be paid as follows:

a)    The Defendants shall make their first payment of $5,000 on or before January 15, 2019;

b)    The Defendants shall pay the balance of $8,750.77 on or before April 1, **2109**;

c)    Payments will be made payable to Plaintiff and delivered on or before their due date to Plaintiff. . . .

d)    Time is of the essence with respect to payments to be made under this Agreement . . . .

Settlement Agreement, 1/11/19, at 1-2 (emphasis added) (Exhibit A to Defendants' Brief in Support of Response and New matter to Plaintiff's Motion to Enforce the Settlement Agreement).

Thus, Paragraph 3(a) provides that the first payment is due on January 15, 2019. Paragraph 3(b), as written, reflects that the payment is due April 1, **2109**. In response to Appellee's motion to enforce the Settlement Agreement, Appellants argued that they were not late with the second payment because it was not due until April 1, 2109. Defendants' Response and New Matter to Plaintiff's Motion to Enforce the Settlement Agreement, 8/2/19, at 1; Defendants' Brief in Response to Plaintiff's Motion to Enforce the Settlement Agreement, 8/2/19, at 1-3.

In addressing this issue, the trial court deemed the date listed in paragraph 3(b) of the Settlement Agreement to be a typographical error. Trial Court Opinion, 10/23/19, at 3. As noted in its summary of the history of this case, the trial court relied on documents of record, including the communications between the parties outlining the terms of the agreement, in reaching this conclusion. *Id.* at 1-2. Moreover, the trial noted that during the August 22, 2019 hearing on the motion to enforce the Settlement Agreement, Appellee's counsel explained the intention of the parties to the Agreement to be that the second payment be made on April 1, 2019.[2] *Id.*

The certified record includes the email to Robert Saldutti from defense counsel Robert Rust, dated September 6, 2018, and referred to by the trial court. This email outlines Appellants' proposed terms of payment for the Settlement Agreement. Complaint for Confession of Judgment, Exhibit 1, 8/17/18, at 1. Specifically, defense counsel stated in response to a request for proposed terms of the agreement: "Does $5,000 in 30 days and the balance in 90 days work for you?" *Id.* A subsequent email, dated January 3, 2019, indicated acceptance of those terms and drafting of a Settlement Agreement. Defendants' Brief in Support of Response and New Matter to Plaintiff's Motion to Enforce the Settlement Agreement, Exhibit A, at 1. Specifically, it stated:

---

[2] Defense counsel did not attend the hearing on the motion to enforce the Settlement Agreement. N.T., 8/22/19, at 1-4.

> Enclosed please find a Stipulation of Settlement which must be executed and returned to my attention with your client's first payment of $5,000.00 on or before January 15, 2019. Please ensure that all payments are made in a prompt and timely manner.

*Id.*

Thus, it is clear that the Settlement Agreement executed on January 11, 2019, was based on the terms as outlined by the parties. Furthermore, the evidence supports the conclusion that it was the parties' intentions that the entirety of the amount owed would be paid within ninety days. Appellants' argument that the second payment was not due until April 1, **2109**, obviously does not align with the parties' intent to have the debt paid within ninety days. Moreover, it is untenable to argue that the second and final payment reasonably would be expected approximately **ninety years** after the first payment. Thus, the transposed number of "2109" included in paragraph 3(b) of the Settlement Agreement was clearly a scrivener's error. Appellants' assertion to the contrary is disingenuous.

Thus, based on the certified record, the trial court properly concluded that the second and final payment under the terms of the Settlement Agreement was due on April 1, 2019. Appellants failed to comply with the terms of the Settlement Agreement. Accordingly, the trial court did not abuse its discretion or commit an error of law when it granted Appellee's motion to enforce the Settlement Agreement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>05/12/2020</u>