# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ivy Hill Congregation of Jehovah's Witnesses, | : | |
| Petitioner | : | |
| | : | No. 316 M.D. 2020 |
| v. | : | |
| | : | Submitted: September 10, 2025 |
| Commonwealth of Pennsylvania, Department of Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                       **FILED:  February 27, 2026**

Ivy Hill Congregation of Jehovah's Witnesses (Ivy Hill) applied for summary relief against the Department of Human Services (DHS). This case returns to us on remand from the Pennsylvania Supreme Court, which ordered this Court to resolve Ivy Hill's application for summary relief on the merits. *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 759 (Pa. 2024) (*Ivy Hill III*). Because DHS did not identify any material issues of fact or otherwise oppose the application, we are constrained by the present procedural posture to grant Ivy Hill's application. Our disposition rests on DHS's failure to

contest the application, so we do not independently resolve whether Ivy Hill's elders qualify for the clergyman privilege.

## I. BACKGROUND[1]

Per *Ivy Hill III*, Ivy Hill "is a congregation of approximately 140 individuals in Philadelphia, Pennsylvania, who follow the tenets of the Jehovah's Witnesses religion. Every Jehovah's Witnesses congregation is led by a body of elders, which consists of a group of five to seven volunteers." *Id.* at 746. "The elders are authorized to hear and respond to a congregant's confession of sin, and, under their beliefs, are obliged to maintain the confidentiality of confessions." *Id.* In Ivy Hill's view, "its elders may receive confessions involving child abuse, which would" relieve the elders from complying with the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301-6388. *Id.*

Ivy Hill filed a petition for review in this Court's original jurisdiction, raising two counts. Pet. for Rev., 5/20/20. First, Ivy Hill "sought a declaration that its elders are entitled to protection under [23 Pa.C.S. § 6311.1(b) and 42 Pa.C.S. § 5943] because they are ministers of the gospel of a regularly established church, who are neither self-ordained, nor members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers." *Ivy Hill III*, 310 A.3d at 747. Second, in the alternative, Ivy Hill requested a declaration that 42 Pa.C.S. § 5943 was unconstitutional if this Court determined that Ivy Hill's elders could not invoke 42 Pa.C.S. § 5943. *Id.* Ivy Hill also applied for summary relief,

---

[1] Typically, we would state the facts in the light most favorable to DHS, as the non-moving party. DHS, however, did not file a response in opposition to Ivy Hill's application for summary relief or otherwise dispute the facts in its brief in opposition. *See generally* DHS's Br., 10/29/21. DHS's answer and new matter to Ivy Hill's petition for review also broadly denied Ivy Hill's "statement of material facts." *See* Answer & New Matter, 7/16/21, ¶¶ 9-32 ("After a reasonable investigation, [DHS] is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations.").

alleging that "the case presented a pure question of law as to whether the clergyman privilege applies to its elders, and that, to the extent the case implicates issues of fact, such facts are not the proper subject of dispute because they relate to the elders' ecclesiastic functions of the Jehovah's Witnesses faith." *Id.*

DHS filed preliminary objections, which this *en banc* Court overruled.[2] *Id.* at 748 (discussing *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 316 M.D. 2020, filed June 17, 2021) (*en banc*), 2021 WL 2472274 (*Ivy Hill I*)). In regard to Ivy Hill's application for summary relief, *Ivy Hill I* acknowledged "that the central issue in the case is whether [Ivy Hill's] elders can assert the clergyman privilege, which requires a determination of whether, under Section 5943, the elders are clergymen, priests, rabbis or ministers of the gospel of any regularly established church or religious organization, but are not clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers." *Ivy Hill III*, 310 A.3d at 750 (citation modified). Because there was "no evidentiary record . . . concerning matters such as the doctrine and organization of [Ivy Hill] or Jehovah's Witnesses upon which to make such a determination," *Ivy Hill I* denied Ivy Hill's application. *Id.* (citation modified). DHS filed an answer and new matter to Ivy Hill's petition for review, and Ivy Hill filed a reply to the new matter.[3]

---

[2] Upon review of *Ivy Hill I,* we note the following: DHS administers the CPSL and receives reports of suspected child abuse, but DHS does not prosecute failures to report. Prosecutorial responsibility lies with the Attorney General and district attorneys. *See* 23 Pa.C.S. § 6319. *Ivy Hill I* nevertheless held that any law enforcement interest was "indirect and incidental" to Ivy Hill's claims. *Ivy Hill I*, 2021 WL 2472274, at *8. DHS, however, did not seek interlocutory review of that determination, and no appealable final order exists that would permit DHS to question its role as respondent. *Ivy Hill I* thus binds this Court.

[3] In its new matter, DHS asserted, *inter alia*, that Ivy Hill's 2020 petition for review was untimely filed beyond the six-year statute of limitations. Answer & New Matter ¶ 89 ("To the extent that Petitioner has identified that it has been seeking a resolution to this matter since, at the

The parties completed discovery, and Ivy Hill again applied for summary relief, "requesting a declaration that its elders are entitled to invoke the clergyman privilege under 23 Pa.C.S. § 6311.1(b) and 42 Pa.C.S. § 5943, and, in the event the court determined that Section [5943] does not apply to its elders, that Section 5943 be deemed unconstitutional." *Id.*[4] This Court ordered DHS to file a response to Ivy Hill's application and a brief in support thereof. Order, 10/7/21. DHS, however, only filed a brief in opposition, which did not dispute any facts or law, *e.g.*, whether Ivy Hill's elders could invoke the clergyman privilege. *See Ivy Hill III*, 310 A.3d at 750. Ivy Hill filed a reply brief claiming that DHS "failed to dispute either the facts or the law . . . ." *Id.*

This Court denied Ivy Hill's application for summary relief and dismissed Ivy Hill's petition for review. *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 316 M.D. 2020, filed May 10, 2022) (*en banc*), 2022 WL 1464353 (*Ivy Hill II*). *Ivy Hill III* reversed and remanded for further proceedings. *Ivy Hill III*, 310 A.3d at 759. On remand, Ivy Hill filed an unopposed application to have this Court resolve its application for summary relief on the previously filed briefs. Order, 3/27/24; *see also Ivy Hill III*, 310 A.3d at 759.

## II. ISSUE

As noted herein, Ivy Hill requests "a declaration that its elders are

earliest 1998 (*see* Pet. Ex. A), Respondent asserts that Petitioner is outside of the applicable statute of limitations period to bring this action. *See* 42 Pa.C.S.A. § 5527(b).". Ivy Hill's 2020 petition was untimely, per DHS, because in 1998, Watchtower requested the Pennsylvania Attorney General's legal advice on the issue. *See* Pet. for Rev. at Ex. A. Ivy Hill denied DHS's affirmative defense. Reply to New Matter, 7/27/21, ¶ 89.

[4] Specifically, Ivy Hill requested the following declaration: "the elders of the Ivy Hill Congregation of Jehovah's Witnesses are entitled to the protections set forth in Section 6311.1(b)(1) of the CPSL and the privilege afforded to clergymen by Section 5943 of the Judicial Code when circumstances warrant, because they are ministers of the gospel of a regularly established church and are neither 'self-ordained' nor 'members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers.'" Appl. for Summ. J., 9/21/21, at 41.

4

entitled to invoke the clergyman privilege under 23 Pa.C.S. § 6311.1(b) and 42 Pa.C.S. § 5943, and, in the event the court determined that Section [5943] does not apply to its elders, that Section 5943 be deemed unconstitutional." *Ivy Hill III*, 310 A.3d at 750.

### III. DISCUSSION[5]

We address Ivy Hill's application in the posture presented: DHS offers no substantive opposition to either the facts or the law. Turning to these unopposed arguments, Ivy Hill argues that the record is undisputed that its elders are clergymen under the plain language of 42 Pa.C.S. § 5943. Ivy Hill's Br. at 28-31. Ivy Hill alternatively reasons that even if 42 Pa.C.S. § 5943 were ambiguous, based on legislative intent and history of the privilege, Ivy Hill's elders would still qualify as clergymen. *Id.* at 35-39. Ivy Hill also argues that the "narrow exception to the clergymen privilege does not apply to" its elders. *Id.* at 39-58. Nevertheless, if this Court holds that the exception does apply to Ivy Hill's elders, Ivy Hill posits that we should declare the clause unconstitutional as violating federal and Pennsylvania constitutional rights prohibiting religious discrimination. *Id.* at 59-69.

In response, DHS does not identify any material issues of fact or dispute the substantive legal merits. *See generally* DHS's Br. Instead, DHS argues as follows: "(1) DHS is not an antagonistic party to [Ivy Hill] because it has not sued or threatened to sue [Ivy Hill]; (2) because DHS does not investigate violations of the CPSL, it is not an appropriate defendant in the underlying action;[6] (3) [Ivy Hill]

---

[5] Generally, we grant summary relief when "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 436 (Pa. 2020) (citation modified). We "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Id.* (citation omitted).

[6] To be precise, DHS argues that it "does not conduct criminal investigations for failing to

improperly seeks an advisory opinion and validation of a defense to a potential future lawsuit; and (4) [Ivy Hill's] action is barred by the statute of limitations."[7] *Ivy Hill III*, 310 A.3d at 750 (summarizing DHS's arguments). Other than invoking a 2014 amendment to the CPSL, DHS does not assert "any change in the law or facts, nor has it demonstrated that the ruling in *Ivy Hill I* was clearly erroneous," "and that following it would create a manifest injustice." *Id.* at 758.

In reply, Ivy Hill notes "that DHS failed to dispute either the facts or the law as set forth in [Ivy Hill's application for summary relief]; that the Commonwealth Court previously rejected DHS's claim that it is not an antagonistic party to [Ivy Hill]; and that DHS's newly asserted statute of limitations defense was both waived and without merit." *Id.* at 750-51 (summarizing Ivy Hill's reply brief).[8]

We turn to the applicable legal standards. Rule of Appellate Procedure 1532(b) permits a party to file an application for summary relief. Pa.R.A.P. 1532(b). Rule 1532 does not expressly require a response to an application for summary relief. *See* Pa.R.A.P. 1532; *cf.* Pa.R.A.P. 123(b) (providing that a party may file an answer to an application within 14 days).[9]

---

report instances of child abuse" and "plays no role in enforcing the challenged clergy-communicant privilege or the criminal provision attached to mandatory reporters for failing to report child abuse . . . ." DHS's Br. at 11, 13.

[7] DHS, for the first time, argues that the legislature amended the CPSL in 2014 to include a reference to the clergyman privilege. DHS's Br. at 18-19 (suggesting that Ivy Hill untimely applied for summary relief).

[8] No party addressed the import, if any, of the *Nanty-Glo* rule, which provides that uncontradicted testimonial affidavits of a moving party's witnesses are insufficient for summary relief. *Woodford v. Commonwealth (Ins. Dep't)*, 243 A.3d 60, 64, 69-70 (Pa. 2020) (applying *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932) to agency proceedings). However, a non-moving party can waive an argument based on the *Nanty-Glo* rule by not presenting it in a brief in opposition to the motion for summary judgment. *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 37 (Pa. 2006).

[9] Rule of Appellate Procedure 1532(b) states as follows: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b).

6

However, we have analogized an application for summary relief under Chapter 15 to a motion for summary judgment, which is subject to the Rules of Civil Procedure. *Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017); *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); *see generally* Pa.R.Civ.P. 1035.2. Rule of Civil Procedure 1035.3(a) requires an adverse party to file a response within 30 days. Pa.R.Civ.P. 1035.3(a) (stating that subject to one condition not at issue here, "the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying" at least one material issue of fact).[10] "An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.Civ.P. 1035.3(b). "Summary judgment may be entered against a party who does not respond." Pa.R.Civ.P. 1035.3(d) & cmt. ("The rule permits entry of judgment for failure to respond to the motion but does not require it.").

As discussed above, we may grant an application for summary relief when "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Maas*, 234 A.3d at 436 (citation modified). We "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine

---

[10] Rule of Civil Procedure 1035.3(a) follows:

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
    (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
    (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.Civ.P. 1035.3(a).

issue of material fact against the moving party." *Id.* (citation omitted); *accord Scarnati*, 173 A.3d at 1118. "A fact is considered material if its resolution could affect the outcome of the case under the governing law." *Hosp. & Healthsystem Ass'n of Pa. v. Dep't of Ins.*, 77 A.3d 587, 602 (Pa. 2013) (citation omitted).

The governing law at issue is the CPSL, which "identifies certain individuals who are deemed to be mandated reporters. Mandated reporters are required to make a report of suspected child abuse to [DHS] if they have reasonable cause to suspect that a child has been a victim of abuse." *Ivy Hill III*, 310 A.3d at 746 (citation modified). The "list of mandated reporters includes a clergyman, priest, rabbi, minister, Christian Science practitioner, religious healer or spiritual leader of any regularly established church or other religious organization." *Id.* (citation modified). "Mandated reporters who fail to report a case of suspected child abuse are subject to criminal penalties." *Id.* (citation modified). Under 23 Pa.C.S. § 6311.1(a), "otherwise-privileged communications between a mandated reporter and a patient or client of the mandated reporter are not privileged if they involve child abuse, and a mandated reporter is not relieved of the duty to make a report of suspected child abuse." *Id.* (citation omitted). Nevertheless, the CPSL also provides that no clergyman shall be compelled to disclose confidential communications under 42 Pa.C.S. § 5943.[11] *Id.*

---

[11] The CPSL identifies 16 categories of "adults" that must "make a report of suspected child abuse . . . if the person has reasonable cause to suspect that a child is a victim of child abuse," subject to three conditions at 23 Pa.C.S. § 6311(b). 23 Pa.C.S. § 6311(a)-(b). The Judicial Code, in turn, provides that no "clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit." 42 Pa.C.S. § 5943. Thus, paradoxically, (1) while a member of the clergy is a

8

Instantly, DHS did not file any response identifying any genuine issue of material fact. *See* Pa.R.Civ.P. 1035.3(a). DHS also did not "supplement the record or set forth the reasons why [it could not] present evidence essential to justify opposition to" Ivy Hill's application. *See* Pa.R.Civ.P. 1035.3(b); *see also Ivy Hill III*, 310 A.3d at 756. DHS's brief in opposition similarly did not dispute any facts. *See generally* DHS's Br. Accordingly, DHS's failure to respond operates as a procedural concession that no material issues of fact exist. *See* Pa.R.Civ.P. 1035.3(b), (d).

As for whether Ivy Hill is entitled to relief under the law, DHS similarly did not dispute the substantive legal merits. *See generally* DHS's Br. To the extent that DHS raises, for the first time, a statute of limitations defense based on the 2014 amendments to the CPSL, DHS waived the defense by failing to preserve it with specificity in DHS's new matter. *See* Pa.R.Civ.P. 1019(a); *El-Gharbaoui v. Ajayi*, 260 A.3d 944, 963 (Pa. Super. 2021) ("An affirmative defense, including a statute of limitations defense, may not be raised by general averment but, rather, must be supported by factual allegations sufficient to give rise to the affirmative defense." (citation omitted)).[12]

To the degree that DHS invokes the statute of limitations based on the 1998 letter to Watchtower, *see* Answer & New Matter ¶ 89, DHS failed to identify any issues of material fact that Ivy Hill knew or should have known of the 1998 letter

---

mandated reporter of child abuse and (2) while privileged communications with a member of the clergy are not privileged if those communications involve child abuse, (3) a member of the clergy shall not be compelled and, indeed, is not permitted to disclose confidential communications.

[12] We may cite to Superior Court jurisprudence that we find persuasive. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018); *cf. Steiner v. Markel*, 968 A.2d 1253, 1260 (Pa. 2009) (holding that because the plaintiffs' complaint failed to plead facts sufficient to apprise the defendants that the plaintiffs were raising a breach of contract claim, the plaintiffs essentially waived such claim); *Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1029-30 (Pa. 2018) (holding that pleadings must, *inter alia*, "adequately explain the nature of the claim to the opposing party" (citation modified)).

9

to Watchtower. *See generally* DHS's Br.; *see also id.* at 18 (declaring that "clearly [Watchtower], on behalf of Jehovah's Witnesses, was keeping apprised of changes in legislation" (citation modified)). DHS's succinct declaration—a summary conclusion—does not constitute a material issue of fact, particularly when unsupported by any response. *See* Pa.R.Civ.P. 1035.3(a)-(b). Finally, *Ivy Hill III* rejected DHS's argument that Ivy Hill lacked standing because it "sought an advisory opinion." *Ivy Hill III*, 310 A.3d at 756 ("Notably, DHS did not allege that the relevant facts were not sufficiently developed to permit judicial resolution."). For all these reasons, including the absence of any adversarial testing of Ivy Hill's claims, we grant Ivy Hill's application. *See, e.g.*, *Maas*, 234 A.3d at 436.

We note our concern regarding DHS's failure to meaningfully respond to Ivy Hill's application for summary relief despite being ordered to do so. Order, 10/7/21. DHS filed a brief in opposition, but that brief merely rehashed procedural defenses rejected by *Ivy Hill III*. On the substantive merits, DHS did not dispute the facts. DHS did not contest the law. DHS did not defend its position. Absent any adversarial presentation on the merits, this Court lacked the ability to test Ivy Hill's entitlement to substantive relief. Consequently, our review was limited by the procedural posture, which prevents any meaningful analysis of the merits. DHS's silence on the merits is not our endorsement.

## IV. CONCLUSION

Accordingly, because DHS did not dispute any issues of fact or oppose Ivy Hill's application, we are constrained to grant the requested relief. We emphasize the narrow basis of this disposition: we grant relief only because DHS did not oppose Ivy Hill's application. We did not independently analyze or endorse

10

Ivy Hill's substantive claims regarding the clergyman privilege.


_____
**LORI A. DUMAS, Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivy Hill Congregation of Jehovah's
Witnesses,
                    Petitioner

                    v.

Commonwealth of Pennsylvania,
Department of Human Services,
                    Respondent

:
:
:
:
:   No. 316 M.D. 2020
:
:
:
:
:
:

## **O R D E R**

AND NOW, this 27th day of February, 2026, due to DHS's failure to dispute any issues of fact or otherwise respond, we GRANT the application for summary relief filed by Ivy Hill Congregation of Jehovah's Witnesses.

 

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivy Hill Congregation of Jehovah's Witnesses,

                          Petitioner

                   v.

Commonwealth of Pennsylvania, Department of Human Services,

                      Respondent

:
:
:
:
:
:
:   No. 316 M.D. 2020
:
:
:
:
:   Submitted: September 10, 2025

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

DISSENTING OPINION BY
JUDGE WOLF                              FILED: February 27, 2026

This matter is returned to us from the Pennsylvania Supreme Court[1] with the direction to finally resolve, on the merits, Petitioner Ivy Hill Congregation of Jehovah's Witnesses' (Ivy Hill) application for summary relief (Application), wherein Ivy Hill seeks a declaration that its elders are entitled to invoke what is commonly referred to as the "clergyman privilege" when circumstances warrant, or, alternatively, that Section 5943 of the Judicial Code, 42 Pa.C.S. § 5943, is facially

---

[1] *See Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742 (Pa. 2024) (*Ivy Hill III*).

unconstitutional or unconstitutional as applied to Jehovah's Witnesses under various provisions of our State and Federal Constitutions. Ivy Hill's Application for Summary Relief, filed 9/21/2021, at 41. Despite this dictate from our Supreme Court, the Majority issues a decision granting Ivy Hill's requested relief in full, without any meaningful legal discussion, and on the *sole* basis that Respondent, the Department of Human Services (DHS), did not identify any material issues of fact or challenge the Application by way of substantive legal argument. Because the Majority concludes that this procedural posture constrains the Court to grant Ivy Hill's Application carte blanche, I respectfully dissent.

The procedural history of this case provides relevant insight, and I briefly recount it here. Ivy Hill initiated the instant litigation in May of 2020 by filing a "Petition for Review in the Nature of a Complaint for Declaratory Relief" (Petition) in this Court's original jurisdiction. The Petition contains two counts. Count 1 seeks a declaration that the elders of the Ivy Hill congregation are entitled to the protections set forth in Section 6311.1(b)(1) of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6311.1(b)(1), and the privilege afforded to clergymen by Section 5943 of the Judicial Code. Petition at 20. Count 2, raised in the alternative, seeks a declaration that Section 5943 of the Judicial Code is facially unconstitutional or unconstitutional as applied to Jehovah's Witnesses under several provisions of the United States and Pennsylvania Constitutions. *Id.* at 24-25.

Following the Petition, Ivy Hill filed its first application for summary relief[2] and DHS filed preliminary objections, which this Court considered together in *Ivy Hill I. See Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 316 M.D. 2020, filed June 17, 2021) (*Ivy Hill I*). Through

---

[2] DHS did file an answer to Ivy Hill's first application for summary relief and a brief in opposition thereto. *See* Answer, filed 7/31/2020, and Brief in Opposition, filed 10/2/2020.

its preliminary objections, DHS challenged Ivy Hill's standing, its failure to join law enforcement agencies as indispensable parties, its failure to exhaust administrative remedies, and the veracity of Count 1 on the basis that the relief requested would not terminate the controversy. The *Ivy Hill I* court overruled each of DHS's preliminary objections. It found that (1) Ivy Hill had an interest in the outcome of the litigation that is sufficiently substantial, direct, and immediate to confer standing; (2) that law enforcement officials that may be involved in a future prosecution action were not indispensable to Ivy Hill's claims for declaratory relief; (3) that DHS failed to identify an administrative remedy that Ivy Hill could utilize to pursue its claim; and (4) that Ivy Hill's claim in Count 1 pertains only to "who" may assert the clergyman privilege, not "what" content may be protected, and thus a decision from this Court would terminate the present controversy. *Ivy Hill I*, slip op. at 8-20. Turning to Ivy Hill's application for summary relief, this Court found that the lack of an evidentiary record concerning the doctrine and organization of Ivy Hill precluded its requested relief at that time. *Id.* at 22-23.

The matter subsequently proceeded through discovery and Ivy Hill filed the Application, its second seeking summary relief, on September 21, 2021. DHS was directed to file a response and a brief in support thereof, but only filed a responsive brief. This Court heard oral argument thereon in March 2022, and thereafter dismissed Ivy Hill's Petition and the Application for lack of jurisdiction. *See Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 316 M.D. 2020, filed May 10, 2022) (*Ivy Hill II*). Ivy Hill appealed to the Supreme Court, which vacated this Court's *Ivy Hill II* decision for violation of the coordinate jurisdiction rule, and remanded to this Court for further proceedings. *See Ivy Hill III*. Following remand, this Court issued an order

MSW-3

permitting Ivy Hill's Application to be submitted to this Court for disposition on the briefs previously submitted.

This brings us to the present moment, and while this case's procedural history is lengthy, its current procedural posture is unremarkable. Pending again before the Court is Ivy Hill's Application filed September 21, 2021. Therein, it requests a declaration that its elders are entitled to invoke the clergyman privilege under 23 Pa.C.S. § 6311.1(b) and 42 Pa.C.S. § 5943. Alternatively, if not entitled to invoke such privilege, Ivy Hill asks that this Court hold 42 Pa.C.S. § 5943 unconstitutional. In support of its requested relief, Ivy Hill's brief sets forth various statutory construction arguments and addresses the layered legal analysis required to determine whether Ivy Hill's religious structure is one that affords its elders the clergyman privilege under the relevant statutory provisions. DHS never filed an answer to Ivy Hill's application, and its brief, which was filed before the Supreme Court's decision in *Ivy Hill III*,[3] does not contest any of the facts set forth by Ivy Hill. Thus, the facts for purposes of summary relief are undisputed. Additionally, DHS's brief fails to respond to Ivy Hill's statutory construction arguments, but rather raises other defenses that were rejected in *Ivy Hill I & III* or are waived.

Pennsylvania Rule of Appellate Procedure 1532(b) permits this Court to grant summary relief "if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). However, it cannot be so much as gleaned from the Majority whether Ivy Hill has any right to its requested relief under the statutes at issue. Indeed, the Majority fails to recount any of the undisputed facts, apply any of those facts to the

---

[3] I question the wisdom of this Court's March 27, 2024 order that permitted Ivy Hill's application for summary relief to be submitted to the Court for disposition on the briefs previously filed. *See* Cmwlth. Ct. Order, 3/27/2024. At the very least, DHS should have provided the Court with a new brief following the Supreme Court's decision in *Ivy Hill III*.

statutory provisions, or engage in any meaningful legal analysis of the arguments in favor of relief set forth in Ivy Hill's Application.

The only thing the Majority does make clear is that it is deciding Ivy Hill's Application on a procedural basis. *See* Majority Op. at 10 ("Absent any adversarial presentation on the merits, this Court lacked the ability to test Ivy Hill's entitlement to substantive relief. Consequently, our review was limited by the procedural posture, which prevents any meaningful analysis of the merits. DHS's silence on the merits is not our endorsement."). Indeed, in the same section it grants Ivy Hill the *entirety* of the relief it requests in the Application, the Majority states:

> We emphasize the narrow basis of this disposition: we grant relief only because DHS did not oppose Ivy Hill's application. We did not independently analyze or endorse Ivy Hill's substantive claims regarding the clergyman privilege.

Majority Op. at 10.

While stating that Pa.R.A.P. 1532(b) sets forth the applicable legal standard, the Majority treats DHS's failure to respond with a substantive and relevant legal argument as fatal to this Court's ability to "test Ivy Hill's entitlement to substantive relief." Majority Op. at 10. However, the governing rule of procedure does not even expressly require a response to an application for summary relief. *See* Majority Op. at 6 (citing Pa.R.A.P. 1532 & Pa.R.A.P. 123(b)). Nevertheless, this Court treats DHS's failure to respond with legal argument as preclusive of any analysis, yielding judicial legislation by default.[4]

---

[4] The position that we can't decide legal issues without arguments from both sides blurs the lines between justiciability and issue preservation. *Ivy Hill III* made crystal clear that the issue before this Court is justiciable, and only Ivy Hill, as the movant, has any obligation to preserve arguments related to its requested relief.

That DHS did not rebuke Ivy Hill's statutory construction analysis does not mean that we have to adopt it. To the contrary, it is this Court's "power," "duty," and "responsibility" to interpret all legislation.[5] *Stander v. Kelley*, 250 A.2d 474 (Pa. 1969); *see also* Pa. Const. art. V § 1 (vesting "judicial power" in the courts). The parties cannot "agree" it away. To the contrary, a faithful discharge of our duty requires this Court to specifically determine whether Ivy Hill's elders are entitled to the clergyman privilege based on the undisputed facts before us as applied to the statutory provisions of the CPSL and the Judicial Code. Because the Majority commits grave legal error by abdicating this duty in the name of a procedural irregularity, thus granting Ivy Hill a blank check, I dissent.

_____
MATTHEW S. WOLF, Judge

Judge Wallace joins.

---

[5] This duty does not diminish in the face of a sensitive or unappealing question like the one before us. And while always of the utmost importance, our responsibility to interpret the law is perhaps paramount here where it is unlikely that DHS will appeal from this Court's decision.

MSW-6